# SCOTT TRACTOR COMPANY

2310 EAST MADISON • P. O. BOX 30 • BASTROP, LOUISIANA 71220 • PHONE ( 318) 281-2781 • FAX (318) 281-2784

RECEIVED
IN MONROE, LA

JAN 1 4 2008

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

**OCTOBER 10, 2004**

**WILMOT FARMING VENTURES**
**3070 HWY 52 EAST**
**WILMOT, AR. 71676**

**YOU HAVE TAKEN DELIVERY ON 2 CASE IH 2388 COMBINES AND 2 CASE IH 2052 HEADERS**

**SN# JJC0276134**
**SN# JJC0276130**
**SN# CCC0014062**
**SN# CCC0014065**

**THE ABOVE EQUIPMENT IS ON A CASE CREDIT CONTRACT. THIS LETTER IS TO STATE THAT YOU HAVE THE OPTION OF RETURNING THIS EQUIPMENT TO US ON OR BEFORE DECEMBER 1, 2005 OR YOU MAY CONTINUE WITH THE TERMS OF YOUR LEASE/CONTRACT.**

**SCOTT TRACTOR COMPANY**
**BASTROP**

**LARRY WILLIAMS**

**EXHIBIT**
**1**

 TRACTOR COMPANY

2310 EAST MADISON • P. O. BOX 30 • BASTROP, LOUISIANA 71220 • PHONE ( 318) 281-2781 • FAX (318) 281-2784

NOVEMBER 22, 2004

WILMOT FARMING VENTURES
3070 HWY 52 EAST
WILMOT, AR. 71676

YOU HAVE TAKEN DELIVERY ON 3 CASE IH MX285 TRACTORS

SN# JAZ133021
SN# JAZ132974
SN# JAZ130428

THE ABOVE EQUIPMENT IS ON A CASE CREDIT CONTRACT.  THE TERMS
OF OUR AGREEMENT ARE FOR 12 MONTHS.  AFTER WHICH TIME THIS
TERM YOU HAVE THE OPTION OF RETURNING THIS EQUIPMENT TO US
OR YOU MAY CONTINUE WITH THE TERMS OF THE LEASE/CONTRACT.

SCOTT TRACTOR COMPANY
BASTROP

LARRY WILLIAMS

EXHIBIT
2

# SCOTT TRACTOR COMPANY

2310 EAST MADISON  •  P. O. BOX 30  •  BASTROP, LOUISIANA 71220  •  PHONE ( 318) 281-2781  •  FAX (318) 281-2784

**NOVEMBER 22, 2004**

**ARKLA FARMING VENTURES**
**3070 HWY 52 EAST**
**WILMOT, AR. 71676**

**YOU HAVE TAKEN DELIVERY ON 1 CASE IH MX285 TRACTOR**

**SN#  JAZ132940**

**THE ABOVE EQUIPMENT IS ON A CASE CREDIT CONTRACT.  THE TERMS OF OUR AGREEMENT ARE FOR 12 MONTHS.  AFTER WHICH TIME, YOU HAVE THE OPTION OF RETURNING THIS EQUIPMENT TO US OR YOU MAY CONTINUE WITH THE TERMS OF THE LEASE/CONTRACT.**

**SCOTT TRACTOR COMPANY**
**BASTROP**

**LARRY WILLIAMS**

EXHIBIT
3

# CNH Capital

10-11-05

WILMOT FARMING VENTURES, LLC
3070 Hwy 52 East
Wilmot, AR 71676

Account Number: 0032056075 22627001
The following is the equipment on your contract:

| MAKE | TYPE | MODEL | SERIAL NO. |
|------|------|-------|------------|
| Caseih | Tractor | MX210 | JAZ133463 |
| ---- | ---- | ----- | ---------- |

Dear Customer,

Thank you for financing with CNH Capital America LLC. Your account is paid in full.

At CNH Capital America LLC, our goal is to make equipment ownership or leasing as easy and convenient as possible. The next time you are considering the acquisition of equipment, see your dealer about the flexible financing and leasing plans available through CNH Capital America LLC.

Your business is appreciated, and we hope to be able to serve you again. If you have any questions, please feel free to write us at the address below, or phone us during normal business hours.

Thank you
CNH Capital America LLC

0919/01130

EXHIBIT 4

CNH Capital America LLC

P.O. Box 292
Racine, WI 53401

**CASE CREDIT** RETAIL INSTALLMENT SALE CONTRACT AND
SECURITY AGREEMENT (Fixed Rate)
LOUISIANA

Dealer No. 22627
Credit Application No. 98040-A

"Buyer(s)": Legal Name(s), Street Address, City, State, Zip Code
WILMOT FARMING VENTURES, LLC
3070 HWY 52 EAST
WILMOT, AR 71674

County/Parish Ashley

Social Security No.
or Taxpayer ID No. 72-1449749

☐ Individual/Sole Proprietorship
If So, State of Principal
Residence: _____

☐ General Partnership
If So, State of Chief
Executive Office: _____

☒ Corporation/LLC/LP
If So, State in Which Formed: AR
Organization ID No.: CP00055547

"Seller": (Dealer's Legal Name and Address)
SCOTT TRACTOR CO.,L.L.C.
P. O. BOX 30
2310 EAST MADISON
BASTROP,, LA 71220
Morehouse County

P A I D
SEP 1 9 2005

The undersigned Buyer (if more than one, collectively called "Buyer") hereby purchases from Seller and Seller hereby sells to Buyer the following goods (the "Equipment") at the Time Sale Price and upon the terms set forth herein:

| NEW* OR USED | "EQUIPMENT" (Make and Type) | MODEL | SERIAL NUMBER | HOURS | "CASH SALE PRICE" |
|---|---|---|---|---|---|
| N | Case IH Tractor | MX210 | JAZ133463 | | 103,100.00 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

The above Equipment is purchased for ☐ commercial/business use ☒ agricultural use. *New Equipment is unused equipment, a rental unit or a demonstrator for which the manufacturer will supply all or a portion of a new equipment warranty; this Equipment may have been manufactured in a year prior to the year of purchase.

| | TOTAL | 103,100.00 |
|---|---|---|

| "TRADE-IN EQUIPMENT" MAKE | TYPE | MODEL | SERIAL NUMBER | HOURS | GROSS ALLOWANCE (in Dollars) | SECURED DEBT DUE (in Dollars) | NET TRADE-IN ALLOWANCE (in Dollars) |
|---|---|---|---|---|---|---|---|
| Case IH | Tractor | MXM190 | ACM206559 | | 80,000.00 | 79,619.00 | 381.00 |
| | | | | | | | |
| | | | | | | | |

**NO WARRANTY.** The Equipment is sold AS IS except for any applicable manufacturer's express, written warranty. If any manufacturer's express warranty applies to the Equipment, such warranty is restricted to the manufacturer's written, limited warranty provided separately to Buyer. Seller and manufacturer make no other representation or warranty, express or implied, and specifically exclude the implied warranties of merchantability and fitness for particular purpose.* Neither Seller nor manufacturer will be liable for incidental or consequential damages resulting from a breach of any express warranty or any implied warranty imposed by law.*
*Some states do not allow these limitations and exclusions, and they shall not apply to the extent such limitations or exclusions are not allowed by applicable state law.

**PREPAYMENTS.** Buyer may make a partial prepayment of the unpaid principal balance of this contract at any time, but any partial prepayment will not change or defer Buyer's next scheduled payments. If Buyer prepays the full unpaid principal balance on construction equipment for commercial/business use, Buyer shall pay a prepayment fee of up to $150.

**LATE CHARGES/DEFAULT RATE/RETURNED CHECKS.** Buyer shall pay a late charge on each payment more than 10 days past due in an amount equal to five percent (5%) of the delinquent payment. Buyer shall pay interest on the unpaid principal balance of this Contract after maturity (by acceleration or otherwise) at the rate of 18% per annum until this contract is paid in full. If a check is returned for any reason, Seller/Assignee may charge Buyer a Returned Check Processing Fee in an amount equal to five percent (5%) of the dishonored check, or $25, whichever is greater.

**EXTENSIONS AND REFINANCING.** If Seller or Assignee extends, defers or refinances any payments due under this Contract, Seller/Assignee may, at its option, increase the interest rate (APR) over the period of extension.

**SECURITY INTEREST AND COLLATERAL.** Buyer hereby grants to Seller a security interest in the Equipment, and in all improvements, parts and accessories belonging to the Equipment, and all substitutions, replacements, products, proceeds (such as insurance proceeds) and all accessions related to the Equipment (the Equipment and such items are collectively referred to herein as the "Collateral"), to secure payment and performance of all existing and future obligations of Buyer under this contract (the "Contract") or any other contract between Buyer and Seller, between Buyer and Assignee or any affiliate of Assignee (the "Obligations"). Loss of or damage to the Equipment shall not release Buyer from any of the obligations.

Upon request, Buyer shall take any action reasonably deemed necessary by Seller to protect and enforce Seller's interest in the Collateral or rights under this Contract. Seller is authorized to examine the Collateral wherever located at any reasonable time or times. Buyer authorizes Seller to insert in this Contract, or amend any financing statement or title registration documentation to reflect, the serial and/or model numbers of the Equipment if unknown at the time this Contract is executed and to correct any errors in such numbers or any other errors in the description of the Equipment.

BUYER REPRESENTS THAT THE EQUIPMENT IS NOT BEING PURCHASED FOR FAMILY, HOUSEHOLD OR PERSONAL USE.

**NOTICE TO THE BUYER:**

1. DO NOT SIGN THIS BEFORE YOU READ THE WRITING ON THE ADDITIONAL PAGES, EVEN IF OTHERWISE ADVISED.

2. DO NOT SIGN THIS IF IT CONTAINS ANY BLANK SPACES.

3. YOU ARE ENTITLED TO AN EXACT COPY OF ANY CONTRACT YOU SIGN.

**ADDITIONAL PROVISIONS CONCERNING RIGHTS AND DUTIES OF THE PARTIES ON THE ADDITIONAL PAGES OF THIS CONTRACT ARE A PART OF THIS CONTRACT. THE FIRST PAGE MUST BE SIGNED, AND ALL OTHER PAGES INITIALED BY THE BUYER(S).**

I agree to the foregoing. I have received and examined the Equipment, which is in good operating order and condition and is as described. I acknowledge receipt of a copy of this Contract. I agree to purchase the Equipment described above on the terms of this Contract.

X _Jeffrey D. Morris_
Buyer/Buyer's Representative

08-30-2004   WILMOT FARMING VENTURES, LLC
Date        Print Name

X _____
Buyer/Buyer's Representative

_____   _____
Date        Print Name

X _____
Seller's Representative

08-30-2004   SCOTT TRACTOR CO.,L.L.C.
Date        Print Name

Page 1 of 5

21044C Rev. 05/02 Previous editions may not be used.

**CASE CREDIT**

Dealer No. 22627

Credit Application No. 98040-A

Buyer Name WILMOT FARMING VENTURES, LLC

## STATEMENT OF TRANSACTION

Buyer agrees to pay Seller and its assigns the Amount Financed plus Interest Finance Charges at the APR rate until this contract is paid in full, in accordance with the following schedule:

| NO. OF PAYMENTS | PERIOD OF PAYMENTS | AMOUNT OF EACH PAYMENT | BEGINNING MM/DD/YYYY |
|---|---|---|---|
| 1 | 6 Month | $ 15,000.00 | 03/01/2005 |
| 4 | 12 Month | $ 22,326.79 | 03/01/2006 |
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |

1. Cash Sale Price ............................................. 1. $ 103,100.00
2. Cash Down Payment ............ $ 14,619.00
   Net Trade-in Allowance ......... $ 381.00
   Manufacturer's Rebate .......... $ N/A
   Total Down Payment ....................................... 2. $ 15,000.00
3. Unpaid Balance of Cash Sale Price (1 minus 2) ...... 3. $ 88,100.00
4. Other Charges
   (a) Taxes (Not in Cash Price) ..... $ N/A
   (b) License, Title and Official Fees .. $ 16.00
   (c) UCC Filing Service Fee ....... $ 12.50
   (d) Administrative Fee ........... $ 50.00
   (e) Physical Damage Insurance .... $ N/A
   (f) Credit Life Insurance ........ $ N/A
   (g) Credit Accident & Health Insurance .. $ N/A
   (h) Liability Insurance .......... $ N/A
   (i) Manufacturer's Extended Warranty Plan .. $ N/A
   (j) Extended Service Protection Plan .. $ N/A
   (k) (Other) _____ .... $ N/A
   Total Other Charges ............................. 4. $ 78.50
5. Amount Financed (3+4) .................................. 5. $ 88,178.50
6. Interest Finance Charges ............................... 6. $ 16,128.66
7. Total of Payments (5+6) ................................ 7. $ 104,307.16
8. Total Sales Price (1+4+6) .............................. 8. $ 119,307.16
9. The amount financed hereof shall bear Interest Finance Charges computed at a per annum rate (the "APR") equal to 6.70 % (this is a FIXED RATE contract).
10. Date APR begins accruing: 08-30-2004
    Mo.   Day   Yr.

The total "Secured Debt Due" is $ 79,619.00

The secured debt on the Trade-in Equipment is owed to:

Agri Credit — Acct. No. 301-0000545-000
Lender Name

P O BOX 2000 — Phone No. 800-873-2474
Lender Address

JOHNSTON,          IA          50131-0020
Lender City        State       Zip

Payoff Good Through: 09-15-2004

☐ If checked, Seller represents that the above debt has been paid.

Buyer hereby conveys to Seller all right, title and interest in the Trade-in Equipment free and clear of all encumbrances except as noted above.

## GUARANTY:

The undersigned guarantees the prompt performance of Buyer's Obligations under the Contract, and all modifications and extensions thereof, including prompt payment of all sums when due. The undersigned shall, immediately upon demand, pay any sum due under the Contract and all modifications and extensions thereof, without setoff. The undersigned hereby waives notice of any modifications, amendments, or extensions of the Contract, and of Buyer's nonperformance or breach of the Contract. The payment obligations under this Guaranty are the direct, primary, and continuing obligations of the undersigned and the undersigned's heirs, successors and assigns, and not merely a guaranty of collection. Capitalized terms used in this Guaranty have the same meaning given to them in the Contract.

Guarantor Signature: _____

Print Name: _____

Address: _____

City, State, Zip: _____

X _____
Buyer's Initials

21044C  Rev. 05/02  Previous editions may not be used.

Page 2 of 5

CASE CREDIT COPY          Original          V7.0

**CASE CREDIT**

Dealer No. 22627
Credit Application No. 98040-A
Buyer Name WILMOT FARMING VENTURES, LLC

## ADDITIONAL PROVISIONS

1. **Assignment.** Seller will assign this Contract to Case Credit Corporation ("Assignee"). Buyer acknowledges that Seller has the right to assign this Contract, that all rights and benefits (if any) of Seller under this Contract may be exercised by Assignee and that no obligations (if any) of Seller pass to Assignee. Upon receipt of notice from Assignee with instructions for payment, Buyer shall make all payments due under this Contract directly to Assignee. This Contract shall be binding on and inure to the benefit of Buyer and Seller and their respective heirs, personal representatives, successors or assigns; provided, however, that Buyer may not assign its obligations under this Contract to any person without Assignee's prior written consent.

2. **Notification of Change in Residence, Principal Office, or Organizational Form.** If Buyer changes (a) its state of principal residence, or (b) the state in which its chief executive office is located, or (c) the state in which its corporation, limited liability company or limited partnership is organized, or (d) its form of organization (such as from an individual to a corporation), Buyer will promptly notify Seller/Assignee in writing, but in no event more than thirty days after any such change.

3. **Waiver of Defenses Against Assignee; Indemnification.** Buyer will not assert against Assignee any claim or defense which Buyer may have against Seller or the manufacturer of the Equipment. Buyer agrees that its obligation to remit payments will not be subject to, and it will not make any claim against Assignee for breach of any representation, warranty or condition with respect to the Equipment and that its obligation to pay Assignee all amounts under this Contract is absolute and unconditional without abatement, reduction, set-off, counterclaim or interruption for any reason whatsoever, notwithstanding any breach or alleged breach of any representation, warranty or condition with respect to the Equipment or any dispute which now or hereafter arises between Buyer and Seller or any other person. Buyer shall indemnify and hold harmless Seller, Assignee and their officers, directors, employees and agents from and against any damage, loss, theft or destruction of the Equipment or any part thereof, and from and against any and all loss, damages, injuries, claims, demands, costs and expenses (including without limitation reasonable attorneys' fees and expenses) of any kind and nature, arising out of or connected with the use, condition (including without limitation, all defects whether or not discoverable by Buyer, Seller or Assignee) or operation of the Equipment or any part thereof. Buyer shall promptly notify Assignee of any loss, damage, theft, destruction, injury, claim, demand, cost or expense related to this Contract or the Equipment of which Buyer has notice.

4. **Buyer's Covenants.** Buyer shall (i) keep the Equipment in the county/parish of Buyer's address set forth on page 1 of this Contract and not remove the Equipment from such address, except temporarily in connection with its ordinary use, unless Assignee consents in writing; (ii) maintain the Equipment in good condition and repair and not permit its value to be impaired; (iii) keep the Collateral free of all liens, encumbrances and security interests of persons other than Assignee; (iv) defend the Collateral against all claims and legal proceedings by persons other than Assignee; (v) pay and discharge when due all taxes, fees, levies and other charges upon the Collateral; (vi) pay when due all taxes arising from the purchase of the Equipment under this Contract, excluding any taxes based upon Seller's net income; (vii) use Equipment solely in the conduct of Buyer's business; (viii) ensure Equipment will be used solely within the intended uses of the manufacturer during the term of this Contract; (ix) not sell, lease or otherwise dispose of the Equipment nor permit the Equipment to become an accession to other goods or a fixture; (x) not permit the Equipment to be used in violation of any law, regulation or policy of insurance; and (xi) strictly follow the terms of Provision 7 of this Contract.
Each individual executing this Contract represents and warrants that he or she has the requisite power and authority to enter into this Contract and execute all related documents, to perform its obligations and consummate the transactions contemplated under this Contract and related documents and that the execution and delivery of this Contract and all related documents and the consummation of the transactions under this Contract have been duly authorized by the Buyer.

5. **Insurance.** Buyer shall keep the Equipment and Seller's and Assignee's interest in it insured against fire, theft, physical damage and other hazards under policies listing Assignee as loss payee or as an additional insured, with such provisions, for such amounts (but not less than the principal balance outstanding under this Contract) and by such insurers as shall be satisfactory to Assignee from time to time, and shall furnish to Assignee evidence of such insurance satisfactory to Assignee. Such insurance shall provide at least 30 days written notice of cancellation, lapse or expiration to Assignee. Buyer grant and directs any insurer to pay to Assignee Buyer's interest in the proceeds of all such insurance and any premium refund and Assignee may, at its option, apply such proceeds and refunds to any unpaid balance of the Obligations, whether or not due, and/or to repair or restore the Equipment, returning any excess to Buyer. Buyer must make all payments due under this Contract whether or not the Equipment is insured or underinsured. Assignee is authorized, in the name of Buyer or otherwise, to make, adjust and/or settle claims under any insurance on the Equipment, or cancel the same after the occurrence of an event of default.
If Buyer purchased physical damage insurance that is financed under this Contract, Buyer hereby requests and authorizes Seller (provided Seller is properly licensed to do so) or Seller's designee; (a) to arrange physical damage insurance for the benefit of Seller and Buyer that covers physical damage to the Equipment, (b) to replace or otherwise modify such insurance as Seller deems appropriate and (c) to be Buyer's attorney-in-fact to make claim for, receive payment of and execute and endorse and negotiate all documents, checks or drafts received in payment of loss or damage under the insurance. This Contract includes and hereby incorporates by reference any insurance and Extended Service Plan Addendum signed in connection with this Contract.
**STATEMENT TO BUYER: THE PHYSICAL DAMAGE INSURANCE PURCHASED UNDER THE TERMS OF THIS CONTRACT COVERS ONLY LOSS OF OR DAMAGE TO THE EQUIPMENT. LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED AS PART OF THE PHYSICAL DAMAGE INSURANCE. BUYER UNDERSTANDS THAT IF INSURANCE IS FINANCED UNDER THIS CONTRACT, PRE-PAYMENT OF BUYER'S OBLIGATIONS OR TERMINATION OF THIS CONTRACT MAY RESULT IN LOSS OF INSURANCE COVERAGE.**
**ALL LOUISANA MOTORISTS ARE REQUIRED BY LAW TO BE COVERED BY AN AUTOMOBILE INSURANCE POLICY WITH LEGALLY PRESCRIBED LIABILITY LIMITS. FAILURE TO OBTAIN LIABILITY INSURANCE IN LEGALLY PRESCRIBED AMOUNTS MAY RESULT IN PENALTIES, INCLUDING SUSPENSION OR REVOCATION OF DRIVING PRIVLEGES.**
If Buyer purchased liability insurance that is financed under this Contract, Buyer hereby requests and authorizes Seller (provided Seller is authorized to do so) or Seller's designee to arrange for the liability insurance to be issued.

6. **Modifications and Waivers.** This Contract sets forth the entire understanding between Seller/Assignee and Buyer. No modification, amendment or extension of this Contract and no waiver of any provision of this Contract shall be valid unless in writing and signed by the parties and a waiver of any default hereunder by Seller/Assignee shall not constitute a waiver of any other prior or subsequent default, except that Buyer authorizes Seller/Assignee to insert in this Contract the serial number and/or model number of the Equipment if this information is unknown when this Contract is executed and to correct any errors in such numbers or any other patent errors in the description of the Equipment.

7. **Authority of Assignee to Perform for Buyer.** If Buyer fails to perform any of Buyer's duties set forth in this Contract (including, specifically but without limitation, the purchase of insurance), Assignee may, at its option, in Buyer's name or otherwise, take any such action, including, without limitation, signing Buyer's name or paying any amount so required, and all costs and expenses incurred by Seller or Assignee in connection therewith shall form part of the Obligations and shall be payable by Buyer upon demand with interest from the date of payment by Seller or Assignee at the APR provided herein.

8. **Default.** Buyer shall be in default under this Contract if any of the following occurs:
   (a) Buyer fails to pay when due any of the Obligations, or to perform any other obligation of Buyer in this Contract or in any renewal or refinancing of this Contract;
   (b) a Buyer dies, ceases to exist, becomes insolvent or the subject of bankruptcy, insolvency or liquidation proceedings, attempts to assign this Contract or attempts to remove, sell, transfer, further encumber, part with possession of or sublet any Equipment;
   (c) any warranty or representation made by Buyer to induce Seller to extend credit to Buyer, under this Contract or otherwise, is false in any material respect when made or Buyer fails to perform any covenant under this Contract;
   (d) Buyer fails to maintain applicable required insurance or fails to comply with the requirements of any such insurance;
   (e) any other event occurs that causes Seller or Assignee, in good faith, to consider that payment or performance of the Obligations is impaired or that the Equipment is at risk; or
   (f) the Equipment is impounded or confiscated by any federal, state or local governmental authority.

X 
Buyer's Initials

21044C Rev. 05/02 Previous editions may not be used.

Page 3 of 5

CASE CREDIT COPY     Original     V7.0

**CASE CREDIT**

9. **Expenses.** To the extent not prohibited by law, Buyer shall reimburse Seller or Assignee for any expense incurred by Seller or Assignee in protecting or enforcing their rights under this Contract, including, without limitation, reasonable attorneys' fees and legal expenses and all expenses of taking possession, transporting, holding, repairing, refurbishing, preparing for disposition and disposing of the Collateral, and all expenses and costs incurred in collecting the Obligations, and all such expenses shall form part of the Obligations.

10. **Conflict with Law.** Any provision of this Contract prohibited by applicable law shall be ineffective to the extent of the prohibition without invalidating the remaining portions of this Contract. The validity, construction and enforcement of this Contract are governed by the laws of the state in which the Seller is located. All terms not otherwise defined have the meanings assigned to them by the Uniform Commercial Code.

11. **Authorization to Execute and File Financing Statements and Lien Documents.** Buyer hereby authorizes Seller or Seller's designee to execute and file financing statements, and any motor vehicle title, registration and lien notification documentation, and any amendments thereto on behalf and in the name of Buyer to evidence Seller's security interest in the Collateral.

12. **Interest Finance Charge Calculations.** For Variable Rate Contracts only, the Prime Rate for any given calendar month shall be the rate designated as the "Prime Rate" as published in *The Wall Street Journal* on the 20th day of the prior calendar month (or on the next day published if not published on the 20th day). If *The Wall Street Journal* ceases publication permanently or no longer publishes a "Prime Rate", the Prime Rate shall mean the prime loan rate of any federally chartered bank selected by Assignee. The payments, including Interest Finance Charges, have been calculated using the APR in effect at the commencement of this Contract. The final payment shall be recalculated to reflect increases/decreases in the Prime Rate during the remaining term. The Time Price Differential Rate (APR) shall never be less than 0%.

For all contracts, the Time Price Differential Rate (APR) shall be calculated for the actual number of days elapsed, using a daily rate determined by dividing the annual rate by 365. Buyer shall make all payments in lawful money of the United States of America.

13. **Remedies upon Default.** Upon the occurrence of any event of default, and to the extent permitted by law, Seller/Assignee shall have all rights and remedies provided by the Uniform Commercial Code, and Seller/Assignee may, at its option: (i) declare all unpaid Obligations immediately due and payable without notice or demand, which includes, but is not limited to, a waiver of intent to accelerate and notice of acceleration; (ii) take possession of the Collateral, without notice or hearing, and, where permitted by law, Buyer expressly waives any right to notice or a prior hearing; (iii) render the Equipment unusable; (iv) require Buyer to assemble the Collateral and make it available to Seller/Assignee at any convenient place designated by Seller/Assignee; or (v) sell (including at wholesale) or otherwise dispose of the Collateral at public or private sale for cash or on credit terms, without notice unless required by law. If notice is required by law, ten (10) days' notice to Buyer shall be deemed reasonable notice. All rights and remedies may be exercised by Seller/Assignee either separately or in combination and any action taken by Seller/Assignee to recover payment from Buyer of the Obligations shall not limit Seller/Assignee's rights with respect to the Collateral. If there is a deficiency, Buyer will pay the amount of the deficiency upon demand. To the extent permitted by law Buyer waives notice of dishonor, presentment and demand. Seller/Assignee may apply all proceeds of realization of the Collateral to such part or parts of the Obligations as Seller/Assignee may decide. If there is a of this Contract.

14. **Louisiana Default Remedies.** In addition to the general default remedies available to Seller/Assignee as provided above, Seller/Assignee shall have the following Louisiana specific default remedies: Following the occurrence of an event of default and following Seller/Assignee's election to accelerate payment of the Obligations, Seller/Assignee may foreclose under this Contract and cause the Collateral to be immediately seized and sold under ordinary or executory process, with or without appraisal, in accordance with applicable Louisiana law, whether in term of court or vacation, without the necessity of further demanding payment from Buyer or notifying Buyer or placing Buyer in default. For purposes of foreclosure under Louisiana executory process procedures, Buyer acknowledges to be indebted to, and confessed judgment in Seller/Assignee's favor in the full amount of the Obligations. To the extent permitted under applicable law, Buyer waives: (a) the benefit of appraisal as provided under Articles 2332, 2336, 2723 and 2724 of the Louisiana Code of Civil Procedure, and all other laws with regard to appraisal upon judicial sale; (b) the demand and three (3) days' delay as provided under Articles 2639 and 2721 of the Louisiana Code of Civil Procedure; (c) the notice of seizure is provided under Article 2293 of the Louisiana Code of Civil Procedure; (d) the three (3) days' delay provided under Articles 2331 and 2722 of the Louisiana Code of Civil Procedure; and (e) all other provisions provided under Article 2331, 2722 and 2723 of the Louisiana Code of Civil Procedure and all other Articles not specifically mentioned above. Buyer agrees that Seller/Assignee may appoint a keeper of the Equipment in the event of foreclosure. Buyer additionally agrees to hold Seller/Assignee harmless of any and all claims or damages to persons or properties as a result of seizure of the Collateral.

---

**Automatic Payment Plan Enrollment Form**

The undersigned authorizes Case Credit Corporation or any assignee ("Case Credit") to initiate withdrawals from the account designated below and maintained with the bank identified below by any means agreed upon by Case Credit and the bank, or to withdraw by electronic fund transfer from said account, sums due Case Credit pursuant to retail contracts or leases. The undersigned further authorizes the bank to take all actions necessary to effect such withdrawals and transfers. The undersigned may cancel this authorization by providing Case Credit written notice, but any such cancellation will become effective five days after Case Credit receives the notice. Case Credit may cancel this authorization at any time by written notice.

Customer Name (as it appears on the payment notices) WILMOT FARMING VENTURES, LLC

Address 3070 HWY 52 EAST      City WILMOT      State AR      Zip 71676

Customer's Bank Name _____

Bank Address _____ City _____ State _____ Zip _____

Customer Account Number _____

☐ I prefer to use my checking account. I have enclosed a voided check.

Account # _____

Routing # _____

☐ I prefer to use my savings account. I have confirmed with my bank the routing number and my withdrawal slip is enclosed.

Account # _____

Routing # _____

☐ Be sure to date and sign this form.

Date 08-30-2004      Signature WILMOT FARMING VENTURES, LLC

Date _____      Signature _____

X _____
Buyer's Initials

21044C Rev. 05/02 Previous editions may not be used.

CASE CREDIT COPY      Original      V7.0

# SCOTT TRACTOR COMPANY

2310 EAST MADISON • P. O. BOX 30 • BASTROP, LOUISIANA 71220 • PHONE ( 318) 281-2781 • FAX (318) 281-2784

AUGUST 30, 2004

WILMOT FARMING VENTURES
3070 HWY 52 EAST
WILMOT, AR 71676

YOU HAVE TAKEN DELIVERY ON 1 CASE IH MX210 TRACTOR

SN# JAZ133463

THE TERMS OF OUR AGREEMENT ARE FOR 12 MONTHS.  AFTER
REACHING THIS 12 MONTH TERM YOU HAVE THE OPTION OF
RETURNING THIS TRACTOR TO US OR YOU MAY CONTINUE WITH THE
TERMS OF THE LEASE/CONTRACT.

SCOTT TRACTOR COMPANY
BASTROP

LARRY WILLIAMS

# CNH Capital

10-11-05

ARKLA FLYERS, INC.
P O Box 893
Mer Rouge, LA 71261

Account Number: 0049010144 22627001
The following is the equipment on your contract:

| MAKE | TYPE | MODEL | SERIAL NO. |
|------|------|-------|-----------|
| Caseih | Tractor | MX210 | JAZ133456 |
| ---- | ---- | ----- | ---------- |

Dear Customer,

Thank you for financing with CNH Capital America LLC. Your account is paid in full.

At CNH Capital America LLC, our goal is to make equipment ownership or leasing as easy and convenient as possible. The next time you are considering the acquisition of equipment, see your dealer about the flexible financing and leasing plans available through CNH Capital America LLC.

Your business is appreciated, and we hope to be able to serve you again. If you have any questions, please feel free to write us at the address below, or phone us during normal business hours.

Thank you
CNH Capital America LLC

0919/01130

Exhibit 5

CNH Capital America LLC

P.O. Box 292
Racine, WI 53401

**CASE CREDIT** RETAIL INSTALLMENT SALE CONTRACT AND SECURITY AGREEMENT (Fixed Rate)
LOUISIANA

Dealer No. 22627
Credit Application No. 98039-A

"Buyer(s)": Legal Name(s), Street Address, City, State, Zip Code
ARKLA FLYERS, INC.
8216 MER ROUGE-COLLINSTON RD.
MER ROUGE,, LA 71261

☐ Individual/Sole Proprietorship
If So, State of Principal Residence: _____
☐ General Partnership
If So, State of Chief Executive Office: _____
☒ Corporation/LLC/LP
If So, State In Which Formed: LA
Organization ID No.: 34175617D

"Seller": (Dealer's Legal Name and Address)
SCOTT TRACTOR CO.,L.L.C.
P. O. BOX 30
2310 EAST MADISON
BASTROP,, LA 71220
Morehouse County

**P A I D**
**SEP 1 9 2005**

County/Parish Morehouse
Social Security No. or Taxpayer ID No. 72-1035717

The undersigned Buyer (if more than one, collectively called "Buyer") hereby purchases from Seller and Seller hereby sells to Buyer the following goods (the "Equipment") at the Time Sale Price and upon the terms set forth herein:

| NEW* OR USED | "EQUIPMENT" (Make and Type) | MODEL | SERIAL NUMBER | HOURS | "CASH SALE PRICE" |
|---|---|---|---|---|---|
| N | Case IH Tractor | MX210 | JAZ133456 | | 103,100.00 |
| | | | | | |
| | | | | | |
| | | | | | |

The above Equipment is purchased for ☐ commercial/business use ☒ agricultural use. *New Equipment is unused equipment, a rental unit or a demonstrator for which the manufacturer will supply all or a portion of a new equipment warranty; this Equipment may have been manufactured in a year prior to the year of purchase.

TOTAL 103,100.00

| "TRADE-IN EQUIPMENT" | | | SERIAL NUMBER | HOURS | GROSS ALLOWANCE (In Dollars) | SECURED DEBT DUE (In Dollars) | NET TRADE-IN ALLOWANCE (In Dollars) |
|---|---|---|---|---|---|---|---|
| MAKE | TYPE | MODEL | | | | | |
| Case IH | Tractor | MXM190 | ACM206209 | | 80,000.00 | 78,010.00 | 1,990.00 |
| | | | | | | | |

NO WARRANTY. The Equipment is sold AS IS except for any applicable manufacturer's express, written warranty. If any manufacturer's express warranty applies to the Equipment, such warranty is restricted to the manufacturer's written, limited warranty provided separately to Buyer. Seller and manufacturer make no other representation or warranty, express or implied, and specifically exclude the implied warranties of merchantability and fitness for particular purpose.* Neither Seller nor manufacturer will be liable for incidental or consequential damages resulting from a breach of the express warranty or any implied warranty imposed by law.*

*Some states do not allow these limitations and exclusions, and they shall not apply to the extent such limitations or exclusions are not allowed by applicable state law.*

**PREPAYMENTS.** Buyer may make a partial prepayment of the unpaid principal balance of this contract at any time, but any partial prepayment will not change or defer Buyer's next scheduled payments. If Buyer prepays the full unpaid principal balance on construction equipment for commercial/business use, Buyer shall pay a prepayment fee of up to $150.

**LATE CHARGES/DEFAULT RATE/RETURNED CHECKS.** Buyer shall pay a late charge on each payment more than 10 days past due in an amount equal to five percent (5%) of the delinquent payment. Buyer shall pay interest on the unpaid principal balance of this Contract after maturity (by acceleration or otherwise) at the rate of 18% per annum until this contract is paid in full. If a check is returned for any reason, Seller/Assignee may charge Buyer a Returned Check Processing Fee in an amount equal to five percent (5%) of the dishonored check, or $25, whichever is greater.

**EXTENSIONS AND REFINANCING.** If Seller or Assignee extends, defers or refinances any payments due under this Contract, Seller/Assignee may, at its option, increase the interest rate (APR) over the period of extension.

**SECURITY INTEREST AND COLLATERAL.** Buyer hereby grants to Seller a security interest in the Equipment, and in all improvements, parts and accessories belonging to the Equipment, and all substitutions, replacements, products, proceeds (such as insurance proceeds) and all accessions related to the Equipment (the Equipment and such items are collectively referred to herein as the "Collateral"), to secure payment and performance of all existing and future obligations of Buyer under this contract (the "Contract") or any other contract between Buyer and Seller, between Buyer and Assignee or any affiliate of Assignee (the "Obligations"). Loss of or damage to the Equipment shall not release Buyer from any of the obligations.

Upon request, Buyer shall take any action reasonably deemed necessary by Seller to protect and enforce Seller's interest in the Collateral or rights under this Contract. Seller is authorized to examine the Collateral wherever located at any reasonable time or times. Buyer authorizes Seller to insert in this Contract, or amend any financing statement or title registration documentation to reflect, the serial and/or model numbers of the Equipment if unknown at the time this Contract is executed and to correct any errors in such numbers or any other errors in the description of the Equipment.

BUYER REPRESENTS THAT THE EQUIPMENT IS NOT BEING PURCHASED FOR FAMILY, HOUSEHOLD OR PERSONAL USE.

**NOTICE TO THE BUYER:**

1. DO NOT SIGN THIS BEFORE YOU READ THE WRITING ON THE ADDITIONAL PAGES, EVEN IF OTHERWISE ADVISED.

2. DO NOT SIGN THIS IF IT CONTAINS ANY BLANK SPACES.

3. YOU ARE ENTITLED TO AN EXACT COPY OF ANY CONTRACT YOU SIGN.

ADDITIONAL PROVISIONS CONCERNING RIGHTS AND DUTIES OF THE PARTIES ON THE ADDITIONAL PAGES OF THIS CONTRACT ARE A PART OF THIS CONTRACT. THE FIRST PAGE MUST BE SIGNED, AND ALL OTHER PAGES INITIALED BY THE BUYER(S).

I agree to the foregoing. I have received and examined the Equipment, which is in good operating order and condition and is as described. I acknowledge receipt of a copy of this Contract. I agree to purchase the Equipment described above on the terms of this Contract.

X _Jeffery H. Morris_
Buyer/Buyer's Representative
08-30-2004   ARKLA FLYERS, INC.
Date   Print Name

X _____
Buyer/Buyer's Representative
_____
Date   Print Name

X _____
Seller's Representative
08-30-2004   SCOTT TRACTOR CO.,L.L.C.
Date   Print Name

Page 1 of 5

21044C Rev. 05/02 Previous editions may not be used.

CASE CREDIT COPY          Original          V7.0

**CASE CREDIT**

Dealer No. 22627
Credit Application No. 98039-A
Buyer Name ARKLA FLYERS, INC.

### STATEMENT OF TRANSACTION

Buyer agrees to pay Seller and its assigns the Amount Financed plus Interest Finance Charges at the APR rate until this contract is paid in full, in accordance with the following schedule:

| NO. OF PAYMENTS | PERIOD OF PAYMENTS | AMOUNT OF EACH PAYMENT | BEGINNING MM/DD/YYYY |
|---|---|---|---|
| 1 | 6 Month | $ 15,000.00 | 03/01/2005 |
| 3 | 12 Month | $ 22,391.66 | 03/01/2006 |
| 1 | 12 Month | $ 22,391.61 | 03/01/2009 |
|  |  | $ |  |
|  |  | $ |  |
|  |  | $ |  |
|  |  | $ |  |
|  |  | $ |  |
|  |  | $ |  |
|  |  | $ |  |
|  |  | $ |  |
|  |  | $ |  |
|  |  | $ |  |
|  |  | $ |  |
|  |  | $ |  |
|  |  | $ |  |
|  |  | $ |  |
|  |  | $ |  |
|  |  | $ |  |
|  |  | $ |  |
|  |  | $ |  |

1. Cash Sale Price                                              1. $ 103,100.00
2. Cash Down Payment                       $ 13,010.00
   Net Trade-In Allowance                  $ 1,990.00
   Manufacturer's Rebate                   $ N/A
   Total Down Payment                      2. $ 15,000.00
3. Unpaid Balance of Cash Sale Price (1 minus 2)   3. $ 88,100.00
4. Other Charges
   (a) Taxes (Not in Cash Price)           $ N/A
   (b) License, Title and Official Fees    $ 30.00
   (c) UCC Filing Service Fee              $ 12.50
   (d) Administrative Fee                  $ 250.00
   (e) Physical Damage Insurance           $ N/A
   (f) Credit Life Insurance               $ N/A
   (g) Credit Accident & Health Insurance  $ N/A
   (h) Liability Insurance                 $ N/A
   (i) Manufacturer's Extended Warranty Plan $ N/A
   (j) Extended Service Protection Plan    $ N/A
   (k) (Other) _____                $ N/A
   Total Other Charges                     4. $ 292.50
5. Amount Financed (3+4)                   5. $ 88,392.50
6. Interest Finance Charges                6. $ 16,174.09
7. Total of Payments (5+6)                 7. $ 104,566.59
8. Total Sales Price (1+4+6)               8. $ 119,566.59
9. The amount financed hereof shall bear Interest Finance Charges computed at a per annum rate (the "APR") equal to ___6.70___ % (this is a FIXED RATE contract).
10. Date APR begins accruing: ___08-30-2004___
    Mo. Day Yr.

The total "Secured Debt Due" is $ 78,010.00

The secured debt on the Trade-In Equipment is owed to:

Agri Credit _____ Acct. No. 301-0000485-000
Lender Name
P O BOX 2000 _____ Phone No. 800-873-2474
Lender Address
JOHNSTON,          IA          50131-0020
Lender City        State        Zip

Payoff Good Through 09-15-2004

☐ If checked, Seller represents that the above debt has been paid.

Buyer hereby conveys to Seller all right, title and interest in the Trade-In Equipment free and clear of all encumbrances except as noted above.

### GUARANTY:

The undersigned guarantees the prompt performance of Buyer's Obligations under the Contract, and all modifications and extensions thereof, including prompt payment of all sums when due. The undersigned shall, immediately upon demand, pay any sum due under the Contract, and of Buyer's nonperformance or breach of without setoff. The undersigned hereby waives notice of any modifications, amendments, or extensions of the Contract, and of Buyer's nonperformance or breach of the Contract. The payment obligations under this Guaranty are the direct, primary, and continuing obligations of the undersigned and the undersigned's heirs, successors and assigns, and not merely a guaranty of collection. Capitalized terms used in this Guaranty have the same meaning given to them in the Contract.

Guarantor Signature: _____      Address: _____

Print Name: _____               City, State, Zip: _____

X _____
Buyer's Initials

21044C Rev. 05/02 Previous editions may not be used.

CASE CREDIT COPY          Original          V7.0

**CASE CREDIT**

Dealer No. 22627
Credit Application No. 98039-A
Buyer Name ARKLA FLYERS, INC.

## ADDITIONAL PROVISIONS

1. **Assignment.** Seller will assign this Contract to Case Credit Corporation ("Assignee"). Buyer acknowledges that Seller has the right to assign this Contract, that all rights and benefits but no obligations (if any) of Seller under this Contract may be exercised by Assignee and that no obligations (if any) of Seller pass to Assignee. Upon receipt of notice from Assignee with instructions for payment, Buyer shall make all payments due under this Contract directly to Assignee. This Contract shall be binding on and inure to the benefit of Buyer and Seller and their respective heirs, personal representatives, successors or assigns; provided, however, that Buyer may not assign its obligations under this Contract to any person without Assignee's prior written consent.

2. **Notification of Change in Residence, Principal Office, or Organizational Form.** If Buyer changes (a) its state of principal residence, or (b) the state in which its chief executive office is located, or (c) the state in which its corporation, limited liability company or limited partnership is organized, or (d) its form of organization (such as from an individual to a corporation), Buyer will promptly notify Seller/Assignee in writing, but in no event more than thirty days after any such change.

3. **Waiver of Defenses Against Assignee; Indemnification.** Buyer will not assert against Assignee any claim or defense which Buyer may have against Seller or the manufacturer of the Equipment. Buyer agrees that its obligation to remit payments will not be subject to, and it will not make any claim against Assignee for breach of any representation, warranty or condition with respect to the Equipment and that its obligation to pay Assignee all amounts under this Contract is absolute and unconditional without abatement, reduction, set-off, counterclaim or interruption for any reason whatsoever, notwithstanding any breach or alleged breach of any representation, warranty or condition with respect to the Equipment or any dispute which now or hereafter arises between Buyer and Seller or any other person. Buyer shall indemnify and hold harmless Seller, Assignee and their officers, directors, employees and agents from and against any damage, loss, theft or destruction of the Equipment or any part thereof, and from and against any and all loss, damages, injuries, claims, demands, costs and expenses (including without limitation reasonable attorneys' fees and expenses) of any kind and nature, arising out of or connected with the use, condition (including without limitation, all defects whether or not discoverable by Buyer, Seller or Assignee) or operation of the Equipment or any part thereof. Buyer shall promptly notify Assignee of any loss, damage, theft, destruction, injury, claim, demand, cost or expense related to this Contract or the Equipment of which Buyer has notice.

4. **Buyer's Covenants.** Buyer shall (i) keep the Equipment in the county/parish of Buyer's address set forth on page 1 of this Contract and not remove the Equipment from such address, except temporarily in connection with its ordinary use, unless Assignee consents in writing; (ii) maintain the Equipment in good condition and repair and not permit its value to be impaired; (iii) keep the Collateral free of all liens, encumbrances and security interests of persons other than Assignee; (iv) defend the Collateral against all claims and legal proceedings by persons other than Assignee; (v) pay and discharge when due all taxes, fees, levies and other charges upon the Collateral; (vi) pay when due all taxes arising from the purchase of the Equipment under this Contract, excluding any taxes based upon Seller's net income; (vii) use Equipment solely in the conduct of Buyer's business; (viii) ensure Equipment will be used solely within the intended uses of the manufacturer during the term of this Contract; (ix) not sell, lease or otherwise dispose of the Equipment nor permit the Equipment to become an accession to other goods or a fixture; (x) not permit the Equipment to be used in violation of any law, regulation or policy of insurance; and (xi) strictly follow the terms of Provision 1 of this Contract.

   Each individual executing this Contract represents and warrants that he or she has the requisite power and authority to enter into this Contract and execute all related documents, to perform its obligations and consummate the transactions contemplated under this Contract and related documents and that the execution and delivery of this Contract and all related documents and the consummation of the transactions under this Contract have been duly authorized by the Buyer.

5. **Insurance.** Buyer shall keep the Equipment and Seller's and Assignee's interest in it insured against fire, theft, physical damage and other hazards under policies listing Assignee as loss payee or as an additional insured, with such provisions, for such amounts (but not less than the principal balance outstanding under this Contract) and by such insurers as shall be satisfactory to Assignee from time and time, and shall furnish to Assignee evidence of such insurance satisfactory to Assignee. Such insurance shall provide at least 30 days written notice of cancellation, lapse or expiration to Assignee. Buyer assigns (and directs any insurer to pay) to Assignee Buyer's interest in the proceeds of all such insurance and any premium refund and Assignee may, at its option, apply such proceeds and refunds to any unpaid balance of the Obligations, whether or not due, and/or to repair or restore the Equipment, returning any excess to Buyer. Buyer must make all payments due under this Contract whether or not the Equipment is insured or underinsured. Assignee is authorized, in the name of Buyer or otherwise, to make, adjust and/or settle claims under any insurance on the Equipment, or cancel the same after the occurrence of an event of default.

   If Buyer purchased physical damage insurance that is financed under this Contract, Buyer hereby requests and authorizes Seller (provided Seller is properly licensed to do so) or Seller's designee; (a) to arrange physical damage insurance for the benefit of Seller and Buyer that covers physical damage to the Equipment, (b) to replace or otherwise modify such insurance as Seller deems appropriate and (c) to be Buyer's attorney-in-fact to make claim for, receive payment of and execute and endorse and negotiate all documents, checks or drafts received in payment of loss or damage under the insurance. This Contract includes and hereby incorporates by reference any Insurance and Extended Service Plan Addendum signed in connection with this Contract.

   STATEMENT TO BUYER: THE PHYSICAL DAMAGE INSURANCE PURCHASED UNDER THE TERMS OF THIS CONTRACT COVERS ONLY LOSS OF OR DAMAGE TO THE EQUIPMENT. LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED AS PART OF THE PHYSICAL DAMAGE INSURANCE. BUYER UNDERSTANDS THAT IF INSURANCE IS FINANCED UNDER THIS CONTRACT, PRE-PAYMENT OF BUYER'S OBLIGATIONS OR TERMINATION OF THIS CONTRACT MAY RESULT IN LOSS OF INSURANCE COVERAGE.

   **ALL LOUISIANA MOTORISTS ARE REQUIRED BY LAW TO BE COVERED BY AN AUTOMOBILE INSURANCE POLICY WITH LEGALLY PRESCRIBED LIABILITY LIMITS. FAILURE TO OBTAIN LIABILITY INSURANCE IN LEGALLY PRESCRIBED AMOUNTS MAY RESULT IN PENALTIES, INCLUDING SUSPENSION OR REVOCATION OF DRIVING PRIVILEGES.**

   If Buyer purchased liability insurance that is financed under this Contract, Buyer hereby requests and authorizes Seller (provided Seller is authorized to do so) or Seller's designee to arrange for the liability insurance to be issued.

6. **Modifications and Waivers.** This Contract sets forth the entire understanding between Seller/Assignee and Buyer. No modification, amendment or extension of this Contract and no waiver of any provision of this Contract shall be valid unless in writing and signed by the parties and a waiver of any default hereunder by Seller/Assignee shall not constitute a waiver of any other prior or subsequent default, except that Buyer authorizes Seller/Assignee to insert in this Contract the serial number and/or model number of any Equipment if this information is unknown when this Contract is executed or to correct any errors in such numbers or any other patent errors in the description of the Equipment.

7. **Authority of Assignee to Perform for Buyer.** If Buyer fails to perform any of Buyer's duties set forth in this Contract (including, specifically but without limitation, the purchase of insurance), Assignee may, at its option, in Buyer's name or otherwise, take any such action, including, without limitation, signing Buyer's name or paying any amount so required, and all costs and expenses incurred by Seller or Assignee in connection therewith shall form part of the Obligations and shall be payable by Buyer upon demand with interest from the date of payment by Seller or Assignee at the APR provided herein.

8. **Default.** Buyer shall be in default under this Contract if any of the following occurs:

   (a) Buyer fails to pay when due any of the Obligations, or to perform any other obligation of Buyer in this Contract or in any renewal or refinancing of this Contract;

   (b) a Buyer dies, ceases to exist, becomes insolvent or the subject of bankruptcy, insolvency or liquidation proceedings, attempts to assign this Contract or attempts to remove, sell, transfer, further encumber, part with possession of or sublet any Equipment;

   (c) any warranty or representation made by Buyer to induce Seller to extend credit to Buyer, under this Contract or otherwise, is false in any material respect when made or Buyer fails to perform any covenant under this Contract;

   (d) Buyer fails to maintain applicable required insurance or fails to comply with the requirements of any such insurance;

   (e) any other event occurs that causes Seller or Assignee, in good faith, to consider that payment or performance of the Obligations is impaired or that the Equipment is at risk; or

   (f) the Equipment is impounded or confiscated by any federal, state or local governmental authority.


X
Buyer's Initials

21044C Rev. 05/02 Previous editions may not be used.

Page 3 of 5

**CASE CREDIT**

Dealer No. 22627

Credit Application No. 98039-A

Buyer Name ARKLA FLYERS, INC.

9. **Expenses.** To the extent not prohibited by law, Buyer shall reimburse Seller or Assignee for any expense incurred by Seller or Assignee in protecting or enforcing their rights under this Contract, including, without limitation, reasonable attorneys' fees and legal expenses and all expenses of taking possession, transporting, holding, repairing, refurbishing, preparing for disposition and disposing of the Collateral, and all expenses and costs incurred in collecting the Obligations, and all such expenses shall form part of the Obligations.

10. **Conflict with Law.** Any provision of this Contract prohibited by applicable law shall be ineffective to the extent of the prohibition without invalidating the remaining portions of this Contract. The validity, construction and enforcement of this Contract are governed by the laws of the state in which the Seller is located. All terms not otherwise defined have the meanings assigned to them by the Uniform Commercial Code.

11. **Authorization to Execute and File Financing Statements and Lien Documents.** Buyer hereby authorizes Seller or Seller's designee to execute and file financing statements, and any motor vehicle title, registration and lien notification documentation, and any amendments thereto on behalf and in the name of Buyer to evidence Seller's security interest in the Collateral.

12. **Interest Finance Charge Calculations.** For Variable Rate Contracts only, the Prime Rate for any given calendar month shall be the rate designated as the "Prime Rate" as published in *The Wall Street Journal* on the 20th day of the prior calendar month (or on the next day published if not published on the 20th day). If *The Wall Street Journal* ceases publication permanently or no longer publishes a "Prime Rate", the Prime Rate shall mean the prime loan rate of any federally chartered bank selected by Assignee. The payments, including Interest Finance Charges, have been calculated using the APR in effect at the commencement of this Contract. The final payment shall be recalculated to reflect increases/decreases in the Prime Rate during the remaining term. The Time Price Differential Rate (APR) shall never be less than 0%.

For all contracts, the Time Price Differential Rate (APR) shall be calculated for the actual number of days elapsed, using a daily rate determined by dividing the annual rate by 365. Buyer shall make all payments in lawful money of the United States of America.

13. **Remedies upon Default.** Upon the occurrence of any event of default, and to the extent permitted by law, Seller/Assignee shall have all rights and remedies provided by the Uniform Commercial Code, and Seller/Assignee may, at its option: (i) declare all unpaid Obligations immediately due and payable without notice or demand, which includes, but is not limited to, a waiver of intent to accelerate and notice of acceleration; (ii) take possession of the Collateral, without notice or hearing, and, where permitted by law, Buyer expressly waives any right to notice or a prior hearing; (iii) render the Equipment unusable; (iv) require Buyer to assemble the Collateral and make it available to Seller/Assignee at any convenient place designated by Seller/Assignee; or (v) sell (including at wholesale) or otherwise dispose of the Collateral at public or private sale for cash or on credit terms, without notice unless required by law. If notice is required by law, ten (10) days' notice to Buyer shall be deemed reasonable notice. All rights and remedies may be exercised by Seller/Assignee either separately or in combination and any action taken by Seller/Assignee to recover payment from Buyer of the Obligations shall not limit Seller/Assignee's rights with respect to the Collateral. Seller/Assignee may decide. If there is a Seller/Assignee may apply all proceeds of realization of the Collateral to such part or parts of the Obligations as Seller/Assignee may decide. If there is a deficiency, Buyer will pay the amount of the deficiency upon demand. To the extent permitted by law Buyer waives notice of dishonor, presentment and demand of this Contract.

14. **Louisiana Default Remedies.** In addition to the general default remedies available to Seller/Assignee as provided above, Seller/Assignee shall have the following Louisiana specific default remedies: Following the occurrence of an event of default and following Seller/Assignee's election to accelerate payment of the Obligations, Seller/Assignee may foreclose under this Contract and cause the Collateral to be immediately seized and sold under ordinary or executory process, with or without appraisal, in accordance with applicable Louisiana law, whether in term of court or vacation, without the necessity of further demanding payment from Buyer or notifying Buyer or placing Buyer in default. For purposes of foreclosure under Louisiana executory process procedures, Buyer acknowledges to be indebted to, and confessed judgment in Seller/Assignee's favor in the full amount of the Obligations. To the extent permitted under applicable law, Buyer waives: (a) the benefit of appraisal as provided under Articles 2332, 2336, 2723 and 2724 of the Louisiana Code of Civil Procedure, and all other laws with regard to appraisal upon judicial sale; (b) the demand and three (3) days' delay as provided under Articles 2639 and 2721 of the Louisiana Code of Civil Procedure; (c) the notice of seizure as provided under Article 2293 of the Louisiana Code of Civil Procedure; (d) the three (3) days' delay provided under Articles 2331 and 2722 of the Louisiana Code of Civil Procedure; and (e) all other provisions provided under Article 2331, 2722 and 2723 of the Louisiana Code of Civil Procedure and all other Articles not specifically mentioned above. Buyer agrees that Seller/Assignee may appoint a keeper of the Equipment in the event of foreclosure. Buyer additionally agrees to hold Seller/Assignee harmless of any and all claims or damages to persons or properties as a result of seizure of the Collateral.

---

**Automatic Payment Plan Enrollment Form**

The undersigned authorizes Case Credit Corporation or any assignee ("Case Credit") to initiate withdrawals from the account designated below and maintained with the bank identified below by any means agreed upon by Case Credit and the bank, or to withdraw by electronic fund transfer from said account, sums due Case Credit pursuant to retail contracts or leases. The undersigned further authorizes the bank to take all actions necessary to effect such withdrawals and transfers. The undersigned may cancel this authorization by providing Case Credit written notice, but any such cancellation will become effective five days after Case Credit receives the notice. Case Credit may cancel this authorization at any time by written notice.

Customer Name (as it appears on the payment notices) ARKLA FLYERS, INC.

Address 8216 MER ROUGE-COLLINSTON RD.    City MER ROUGE,    State LA    Zip 71261

Customer's Bank Name _____

Bank Address _____ City _____ State _____ Zip _____

Customer Account Number _____

☐ I prefer to use my checking account. I have enclosed a voided check.

Routing # _____    Account # _____

☐ I prefer to use my savings account. I have confirmed with my bank the routing number and my withdrawal slip is enclosed.

Routing # _____    Account # _____

☐ Be sure to date and sign this form.

Date 08-30-2004 _____    Signature ARKLA FLYERS, INC.

Date _____    Signature _____

X _____
Buyer's Initials

21044C Rev. 05/02 Previous editions may not be used.

Page 4 of 5

# SCOTT TRACTOR COMPANY

2310 EAST MADISON • P. O. BOX 30 • BASTROP, LOUISIANA 71220 • PHONE (318) 281-2781 • FAX (318) 281-2784

AUGUST 30, 2004

ARKLA FLYERS
8216 MER ROUGE-COLLINSTON RD.
MER ROUGE, LA 71261

YOU HAVE TAKEN DELIVERY ON 1 CASE IH MX210 TRACTOR

SN# JAZ133456

THE TERMS OF OUR AGREEMENT ARE FOR 12 MONTHS.  AFTER
REACHING THIS 12 MONTH TERM YOU HAVE THE OPTION OF
RETURNING THIS TRACTOR TO US OR YOU MAY CONTINUE WITH THE
TERMS OF THE LEASE/CONTRACT.

SCOTT TRACTOR COMPANY
BASTROP

LARRY WILLIAMS